IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                  :
                                  :
TIEMOKO COULIBALY, et al.
                                  :

     v.                           :   Civil Action No. DKC 10-3517

                                  :

J.P. MORGAN CHASE BANK,
N.A., et al.                      :
```

## MEMORANDUM OPINION

Presently pending and ready for review in this loan modification case is the motion for summary judgment filed by Defendant J.P. Morgan Chase Bank, N.A ("Chase") (ECF No. 74). The issues have been briefed in full, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

## I.  Background

### A.  Factual Background

The allegations of the complaint were set forth in detail in ECF No. 54, and only the facts relevant to the three remaining claims against Chase will be recounted here. Except as noted, the following facts are uncontroverted.

On October 16, 2007, Plaintiffs Tiemoko Coulibaly ("Coulibaly") and Fatou Gaye-Coulibaly ("Gaye-Coulibaly") purchased a home in Silver Spring, Maryland. Chase loaned

Plaintiffs the purchase price of $416,500.   On March 16, 2009, Plaintiffs submitted an application to Chase seeking a modification of their loan ("the March 2009 Application") pursuant to the Home Affordable Modification Program ("HAMP"). On July 2, 2009, Chase sent a letter to Plaintiffs that: (1) acknowledged receipt of the March 2009 Application; (2) indicated that Chase had begun "actively reviewing" Plaintiffs' request; and (3) stated that Chase "w[ould] be following up within thirty (30) days" of the date of the letter. (ECF No. 88-2, at 1).   On August 4, 2009, Plaintiffs supplemented the March 2009 Application with information indicating that, as of June 19, 2009, Gaye-Coulibaly was unemployed.

On September 15, 2009, Chase sent a letter to Plaintiffs denying the March 2009 Application because "[Plaintiffs'] income is insufficient for the amount of credit required." (ECF No. 74-4, at 1).   After receiving this letter, Plaintiffs began emailing and telephoning Chase to express their disagreement with the denial and to request reconsideration.   According to a Chase executive, Chase "escalated" the March 2009 Application to its Executive Resolution Group for reconsideration based on Plaintiffs' repeated communications.   (ECF No. 74-2, Reardon Decl. ¶ 7).   On November 5, 2009, a member of the Executive Resolution Group emailed Plaintiffs a letter "containing the

detailed explanation of [their] denial," as requested by Coulibaly. (*Id.* ¶ 10). This letter stated that "[b]ased upon the financial information that [Plaintiffs] provided," which indicated that Coulibaly's actual gross monthly income was $2,717.89 (i.e., his monthly income of $5,725.50 less his monthly expenses, as estimated based on his 2008 tax return), "your income will not support the [modified] mortgage payment." (ECF No. 1-18, at 1). The letter further noted that "[e]ven without deducting the expenses" based on the 2008 tax return, "your income [of $5,725.50] is insufficient to support the mortgage payment even if modified." (*Id.*). Thereafter, Plaintiffs continued to seek modification.

On December 12, 2009, Plaintiffs submitted a second loan modification application to a Chase office in the District of Columbia (the "December 2009 Application"). On December 15, 2009, Chase sent a letter to Plaintiffs "confirm[ing] receipt of [their] recently submitted documentation" and indicating that Plaintiffs "w[ould] be contacted by [Chase] in the near future with a decision on [Plaintiffs'] modification request." (ECF No. 74-6, at 1). According to a Chase executive, the District of Columbia branch forwarded the December 2009 Application to the Executive Resolution Group to be considered along with Plaintiffs' pending requests for reconsideration of the March 2009 Application. (ECF No. 74-2, Reardon Decl. ¶ 14).

3

Plaintiffs aver that Gretchen Reimert, a housing counselor, submitted a third loan modification application to Chase on their behalf on January 20, 2010. (ECF No. 88-1, Coulibaly Decl. ¶ 22). Chase acknowledges that it received a fax from Ms. Reimert on January 22, 2010, but maintains that this fax did not constitute a loan modification application and instead included only a third-party authorization form that allowed Ms. Reimert to speak with Chase on Plaintiffs' behalf. (ECF No. 74-2, Reardon Decl. ¶ 19; *see also* ECF No. 74-7).

On March 2, 2010, Chase sent a letter to Plaintiffs stating that, based on the financial information provided by Plaintiffs indicating that Coulibaly's gross monthly income was $5,725.50, Chase had again concluded that "your income will not support the [modified] mortgage payment." (ECF No. 1-6, at 1). Plaintiffs continued to pursue a loan modification by emailing and telephoning Chase employees. On April 20, 2010, Chase sent another letter to Plaintiffs stating that, based on the financial information provided, "you will be unable to sustain a modified monthly mortgage payment even if a modification was offered at the fullest extent allowed based on investor guidelines." (ECF No. 74-9, at 1).

On April 30, 2010, Coulibaly sent a fax to Chase to "update [his] wife's income" by submitting three recent pay stubs of Gaye-Coulibaly's. (ECF No. 74-11, at 1). According to Chase,

Plaintiffs qualified for a loan modification for the first time
in May 2010 based on (1) the new information regarding Gaye-
Coulibaly's return to work and (2) a re-analysis of Coulibaly's
gross monthly income using current bank statements and his 2008
tax return. (ECF No. 74-2, Reardon Decl. ¶¶ 25-26). On May 20,
2010, Chase offered Plaintiffs a modified loan payment of
$2,574.96 per month.

Plaintiffs were not satisfied by this offer and began
working with an attorney, who sent a letter to Chase on May 25,
2010 requesting a status update. (ECF No. 1-14, at 2). On June
21, 2010, Chase sent a response to Plaintiffs' attorney
detailing four different evaluations of Plaintiffs' eligibility
for a loan modification (the "June 21 Letter"). According to
the June 21 Letter, Chase first evaluated Plaintiffs'
eligibility in September 2009 based on the March 2009
Application. (ECF No. 74-13, at 1). Chase denied the March
2009 Application because the information submitted by Plaintiffs
indicated that: (1) Coulibaly's gross monthly income — adjusted
from $5,725.50 per month to $2,717.89 per month based on
Coulibaly's 2008 amended tax return showing deductions for
"substantial expenses" — was insufficient to obtain a loan
modification and (2) Gaye-Coulibaly had no income. (*Id.*). The
June 21 Letter next explains that, based on Coulibaly's
representations that he had not actually filed his 2008 amended

tax return, Chase conducted a second evaluation of Plaintiffs'
eligibility using a gross monthly income of $5,707.00, and that
Plaintiffs' request "was again denied for insufficient income
and negative Net Present Value (NPV)." (*Id.*).  Per the June 21
Letter, Chase undertook a third evaluation of Plaintiffs'
eligibility in May 2010 based on Coulibaly's submission of
information indicating that Gaye-Coulibaly had returned to work.
(*Id.*).  The June 21 Letter states that based on this third
evaluation, Chase concluded that Plaintiffs had a combined gross
monthly income of $7,382.84 — the sum of Gaye-Coulibaly's
$1,675.09 monthly income and Coulibaly's $5,707.75 monthly
income — but still denied Plaintiffs' request for a loan
modification "due to negative NPV results." (*Id.*).[1]  Finally,
the June 21, 2010 Letter states that Chase conducted a fourth,
"escalated" review of Plaintiffs' eligibility in May 2010 that
involved re-calculating Coulibaly's gross monthly income based
on bank statements and his 2008 tax return. (*Id.*).  Based on
the revised figure of $6,630.00, combined with Gaye-Couliblay's

---

[1] The June 21 Letter explains that during Chase's third
evaluation of Plaintiffs' eligibility in May 2010, Chase
mistakenly used $5,707.75 as Coulibaly's gross monthly income
rather than $5,725, but notes that the difference between the
two figures "is negligible" and would not have affected the
denial that resulted from this third evaluation, which was "due
to negative NPV." (ECF No. 74-13, at 1).

income of $1,675.09, Chase obtained approval for Plaintiffs to make a modified monthly mortgage payment of $2,574.96.  (*Id.*).

### B.   Procedural Background

On December 16, 2010, Plaintiffs filed a fifteen-count pro se complaint against nine named defendants and unspecified "John and Jane Doe Defendants" related to the purchase and financing of their Silver Spring home. (ECF No. 1).  Plaintiffs successfully served eight of the nine named defendants, each of which filed a motion to dismiss.  By a memorandum opinion and order issued August 8, 2011, all but three of Plaintiffs' claims were dismissed.  (ECF Nos. 54, 55).  The court described the three surviving claims, each of which arises under the Equal Credit Opportunity Act ("ECOA"), as follows:

> [T]he court will allow Plaintiffs to proceed with their claims [against Chase] under [15 U.S.C. §] 1691(d)(1) related to their March 2009 and January 2010 loan modification applications . . . .  Plaintiffs may also proceed with their Section 1691(d)(1) claim related to the notice of adverse action they received in response to their March 2009 loan modification application.

(ECF No. 54, at 45).  In the same memorandum opinion and order, Plaintiffs' motions for sanctions against three of the defendants (ECF No. 47) and a motion that was construed as a motion for leave to amend (ECF No. 53) were denied.  Chase filed an answer on August 22, 2011 (ECF No. 56), and a scheduling order was entered on August 23, 2011 (ECF No. 57).

7

Plaintiffs filed a motion for recusal of the undersigned on September 12, 2011 (ECF No. 58), which was denied by a memorandum opinion and order issued on September 16, 2011 (ECF Nos. 59, 60). On December 9, 2011, Plaintiffs filed a "motion for reconsideration under Rule 54(b) of [the court's] order of August 8, 2011 and for sua [s]ponte summary judgment under Rule 56 on all undisputed and undisputable evidences of fact" (ECF No. 61), which was construed as a motion for reconsideration under Rule 54(b) and denied as untimely pursuant to Local Rule 105.10 (ECF No. 62). On December 22, 2011, Plaintiffs filed a second motion for reconsideration that removed all references to Rule 54(b). (*See* ECF No. 63). On December 28, 2011, Plaintiffs' second motion for reconsideration was denied. (ECF No. 64).

On February 6, 2012, Chase moved for summary judgment on Plaintiffs' remaining ECOA claims. (ECF No. 74). Plaintiffs filed on opposition on March 30, 2012 (ECF No. 88), and Chase filed a reply on April 13, 2012 (ECF No. 91).[2]

---

[2] On April 20, 2012, Plaintiffs filed a 15-page document titled "Request For Financial Information And Documents About Defendant, JP Morgan Chase's Resources And Net Worth." (ECF No. 92). Despite the title, this filing is, in effect, a surreply, which Plaintiffs did not request leave to file. Accordingly, it will not be considered. *See* Local Rule 105.2.a.

## II.  Motion for Summary Judgment

### A.  Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the facts that are presented must be construed in the light most favorable to

the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

Although pro se litigants are to be given some latitude, the above standards apply to everyone.  Even a pro se party may not avoid summary judgment by relying on bald assertions and speculative arguments.

**B.   Analysis**

Chase seeks summary judgment on Plaintiffs' remaining claims, each of which arises under the ECOA, 15 U.S.C. § 1691 *et seq*.  The ECOA "contain[s] broad anti-discrimination provisions that 'make it unlawful for any creditor to discriminate against any applicant with respect to any credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age.'" *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (quoting 15 U.S.C. § 1691(a)(1)).  The ECO — along with its accompanying Regulation B, 12 CFR § 202 *et seq.* — also establishes certain notification requirements that a creditor must satisfy.  Relevant here, the ECOA requires a creditor to provide written notice of any adverse action taken in connection with an application for credit within a certain timeframe and pursuant to certain content guidelines.  15 U.S.C. § 1691(d); 12 CFR § 202.9.  When a creditor fails to comply with these requirements, it is in violation of the ECOA, regardless of whether it engaged in any prohibited discrimination.  *See,*

*e.g.*, *Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 (10th Cir. 1986); *Jochum v. Pico Credit Corp. of Westbank*, 730 F.2d 1041, 1043 n.3 (5th Cir. 1984).

As noted above, Plaintiffs' remaining claims assert that Chase violated the ECOA by:  (1) failing to provide a sufficiently detailed response to the March 2009 Application; (2) failing to provide a timely response to the March 2009 Application; and (3) failing to provide a timely response to the loan modification application that Plaintiffs allegedly submitted in January 2010.  For the reasons set forth below, Chase is entitled to judgment as a matter of law on each of these claims.

**1.   Sufficiency of the March 2009 Application Denial**

The undisputed evidence establishes that the September 15, 2009 letter sent by Chase to deny Plaintiffs' March 2009 Application complied with the content requirements set forth in Section 1691(d)(2) of the ECOA, entitling Chase to summary judgment on the first of Plaintiffs' remaining claims.

Section 1691(d)(2) provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2).  Regulation B mandates that a notice of adverse action be in writing and contain five elements:  (1) "a statement of the action taken"; (2) the name and address of the

creditor; (3) a statement explaining the antidiscrimination provisions of the ECOA; (4) the name and address of the federal agency overseeing the creditor's compliance with the ECOA; and (5) either (a) "[a] statement of specific reasons for the action taken" or (b) "[a] disclosure of the applicant's right to a statement of specific reasons." 12 CFR § 202.9(a)(2).

As Chase correctly points out, the September 15, 2009 letter sent to Plaintiffs – the authenticity of which Plaintiffs do not dispute – contains each of the five elements required by Regulation B. (*See* ECF No. 74-4). First, the letter describes the adverse action by stating that Plaintiffs' request for a loan modification is being denied.[3] (*Id.* at 2). Second, the letter clearly states the name and address of Chase, the creditor issuing the denial. (*Id.* at 2-3). Third, the letter contains a boilerplate statement summarizing the anti-discrimination provisions embodied in the ECOA. (*Id.* at 3). Fourth, the letter includes the name and address of the Office of the Comptroller of the Currency, the agency responsible for ensuring that Chase complies with the ECOA. (*Id.*). Finally, the letter states that the basis for the denial of the March

---

[3] Chase does not dispute that it is a "creditor" within the meaning of the ECOA and Regulation B, nor does it dispute that the denial of a loan modification application under HAMP constitutes an "adverse action" as defined by the statute. (*See generally* ECF Nos. 74, 91).

2009 Application is that "[Plaintiffs'] income is insufficient for the amount of credit required." (*Id.* at 2).

Although the complaint alleges that the "one sentence" statement of ineligibility provided by Chase in the denial letter violated Regulation B by not "provid[ing] any explanation o[f the] calculation," (ECF No. 1 ¶ 110), Plaintiffs do not address the purported insufficiency of the September 15, 2009 letter in their opposition (*see generally* ECF No. 88).[4]  In a declaration submitted with their opposition, however, Plaintiffs aver that Chase "constantly changed explanations on the same facts to confuse Plaintiffs" and that "the denial had nothing to do with the income, but with the negative NPV," as evidenced by

---

[4] In any event, the explanation of denial provided by Chase is sufficiently detailed to comply with the ECOA.  Regulation B requires only that the "[t]he statement of reasons for adverse action . . . be specific and indicate the principal reason(s) for the adverse action." 12 CFR § 202.9(b)(2).  In a sample form provided in Appendix C to Regulation B, "[i]ncome insufficient for amount of credit requested" is listed as an example of a "[p]rincipal reason[]" for a denial of credit.  12 CFR Pt. 202, App. C.  In addition, the ECOA did not require Chase to provide specific calculations demonstrating the insufficiency of Plaintiffs' income because, as the Federal Reserve's "Official Staff Interpretations" of Regulation B make clear, "[a] creditor need not describe *how* or *why* a factor adversely affected an applicant." 12 C.F.R. 202 Supp. I (emphasis added); *see also Aikens v. Northwestern Dodge, Inc.*, No. 03-7956, 2006 WL 59408, at *4 (N.D.Ill. Jan. 5, 2006) ("[T]he notice requirement was not intended to ensure that statements of reasons be given in the form of long, detailed personal letters; rather, a short, check-list statement will be sufficient so long as it reasonably indicates the reasons for the adverse action.") (internal quotation marks omitted).

the June 21 Letter sent by Chase to Plaintiffs' attorney that referenced "negative NPV" at several points.  (ECF No. 88-1, ¶¶ 8, 15).  Construed liberally, these affirmations arguably contend that Chase's letter of September 15, 2009 violated Section 16(d)(2) because it should have listed "negative NPV" as the basis for denial either in addition to, or instead of, "insufficient income."  Read in full, however, the June 21 Letter makes clear that the sole reason for Chase's *initial* denial of the March 2009 Application in September 2009 was insufficient income.  (*See* ECF No. 74-13, at 1).  The June 21 Letter indicates that "negative NPV" was a basis for denial only with respect to Plaintiffs' *subsequent* requests for reconsideration, each of which were evaluated after Chase sent the September 15, 2009 letter that is at issue with respect to Plaintiffs' Section 16(d)(2) claim.  Thus, the uncontroverted record establishes that the "principal" — and only — reason for the initial denial of the March 2009 Application was the same reason listed in the September 15, 2009 letter:  "insufficient income."  Chase is therefore entitled to summary judgment on Plaintiffs' claim that the September 15, 2009 denial letter did not comport with Section 1691(d)(2) of the ECOA.

## 2.  Timeliness of the March 2009 Application Denial

Chase also seeks summary judgment on Plaintiffs' second ECOA claim, which asserts that Chase did not provide a timely

14

response to the March 2009 Application.   Section 1691(d)(1) of
the ECOA provides that "[w]ithin thirty days . . . after receipt
of a completed application for credit, a creditor shall notify
the applicant of its action on the application."   15 U.S.C.
§ 1691(d)(1).

Chase admits that, in violation of Section 1691(d)(1), it
did not provide a response to the March 2009 Application within
30 days.   Based on this admission of liability by Chase, three
forms of relief may be available to Plaintiffs:   (1) actual
damages, (2) punitive damages, and (3) attorneys' fees.
*Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982).
As set forth below, none of these forms of relief will be
awarded here because: (1) Plaintiffs have failed to meet their
burden to prove actual damages with the requisite degree of
specificity; (2) punitive damages are not warranted under these
circumstances; and (3) the fee-shifting provision of the ECOA is
inapplicable.

### a.   Actual Damages

Chase correctly contends that it is entitled to summary
judgment with respect to Plaintiffs' claim for actual damages
resulting from Chase's violation of Section 1691(d)(1) in
connection with the March 2009 Application.   The ECOA provides
that "any creditor who fails to comply with any requirement
imposed under this subchapter shall be liable to the aggrieved

applicant for any actual damages sustained by such applicant." 15 U.S.C. § 1691e(a). The actual damages recoverable under the ECOA "may include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment." *Anderson*, 666 F.2d at 1277 (citing cases); *see also Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983). An injury resulting from an ECOA violation is not to be presumed, however; instead, actual damages "must be specifically proven." *Anderson*, 666 F.2d at 1277-78.

In their complaint, Plaintiffs allege that they are entitled to out-of-pocket losses in the amount of $15,728.00, based on the difference between what they paid as mortgage payments from September 2009 to December 2010 ($3,450.00 per month) and what they allegedly should have paid as loan payments during the same time period had Chase approved them for a loan modification in September 2009 in the amount requested ($1,774.90 per month). (ECF No. 1 ¶ 147). As Chase rightly points out, however, any out-of-pocket losses suffered as a result of Chase's delay in issuing an ECOA-compliant declination would have been incurred by Plaintiffs between April 15, 2009 (i.e., when the ECOA required Chase to provide a response) and September 15, 2009 (i.e., when Chase actually responded). Plaintiffs do not allege any damages during this critical time period in the complaint, nor do they address this point in their

16

opposition.   Indeed,   Plaintiffs   do   not   cite   any   specific evidence supporting their claim for out-of-pocket losses, either in the section titled "Damages Issues" (*see* ECF No. 88 at 30-32) or elsewhere.

All   Plaintiffs   offer   is   a   declaration   in   which   they (1) aver   that   the   "income   of   [Coulibaly   alone]   of $5,725 . . . was   enough   to   qualify   for   HAMP   under   [the] waterfall test: an additional income was not necessary" and (2) cite an email from an "expert [on] HAMP" as "evidence[]" that purportedly "affirm[s] that Chase was wrong." (ECF No. 88-1, Coulibaly Decl. ¶ 12).[5]   Even when viewed in a light most favorable   to   Plaintiffs,   this   evidence   does   not   specifically prove out-of-pocket losses during the timeframe relevant to Plaintiffs' ECOA claim (i.e., April 15, 2009 to September 15, 2009) because it fails to establish the requisite causal link between   Chase's   *delay*   in   responding   to   the   March   2009

---

[5] Chase argues that because Plaintiffs did not provide "a computation   of   each   category   of   damages   claimed   by   the disclosing party" as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure and the scheduling order (ECF No. 57), Rule 37(c) of the Federal Rules of Civil Procedure bars Plaintiffs from introducing any new evidence regarding damages. (ECF No. 74, at 9-11; ECF No. 91, at 8-9).   The only new evidence Plaintiffs offer in their opposition to support their claim of actual damages is a declaration. (*See generally* ECF Nos. 88 & 88-1).   Because this declaration, even when considered, does not specifically prove that Plaintiffs suffered out-of-pocket damages as a result of Chase's conceded ECOA violation, the applicability of Rule 37(c) need not be resolved.

Application and Plaintiffs' purported injury.   In other words,
Plaintiffs' evidence focuses on whether Chase should have denied
their request for modification but does not call into question
the uncontroverted record establishing that Chase *would have*
denied the March 2009 Application even had it promptly responded
on April 15, 2009 because, in Chase's view, Plaintiffs did not
become eligible for a loan modification until May 2010.   (*See*
ECF No. 74-2, Reardon Decl. ¶ 25).[6]   The failure to establish
such causation is fatal to a claim for out-of-pocket damages
under the ECOA.   *See, e.g.*, *Sayers v. Gen. Motors Acceptance
Corp.*, 522 F.Supp. 835, 841 (D.Mo. 1981) (concluding that "[n]o

---

[6] Whether Chase should have granted Plaintiffs' request for
a loan modification at some point earlier than May 2010 will not
be decided. As noted in the memorandum opinion dismissing
Plaintiffs' HAMP claims, "'it is well established that there is
no private cause of action under HAMP.'"   ECF No. 54 (quoting
*Melton v. Suntrust Bank*, 780 F.Supp.2d 458, 459 (E.D.Va. Apr.
21, 2011)).   Because Congress clearly delegated HAMP compliance
authority to Freddie Mac, federal courts have been reluctant to
allow borrowers to recast claims alleging HAMP violations as
alternative causes of action.   *See, e.g.*, *Ahmad v. Wells Fargo
Bank, NA*, --- F.Supp.2d ---, No. 11-15204, 2012 WL 917769, at *9
(E.D.Mich. Mar. 19, 2012) (dismissing a claim of negligence
involving alleged failures to conform to the provisions of
HAMP); *Parks v. BAC Home Loan Servicing, LP*, 825 F.Supp.2d 713,
716 (E.D.Va. 2011) (dismissing a claim for breach of the implied
duty of good faith and fair dealing "as it is merely another
attempt to recast the HAMP claim").   Plaintiffs' attempt to
reframe their dismissed HAMP causes of action as a claim for
damages under the ECOA likewise is unavailing.

actual out-of-pocket damages were proved by plaintiff" where the evidence showed that her "loan application would have been rejected by defendant even if no violation of the ECOA had occurred"). Thus, Plaintiffs have failed to meet their burden to prove specifically out-of-pocket losses caused by Chase's failure to respond to the March 2009 Application within 30 days, and summary judgment will be granted in Chase's favor as to the claim for actual damages.[7]

### b. Punitive Damages

Chase is also entitled to summary judgment on Plaintiffs' claim for punitive damages in connection with the untimely

---

[7] To the extent that the complaint could be construed to assert a claim for humiliation damages resulting from Chase's admitted violation of Section 16(d)(2), Plaintiffs also have not met their burden to prove such damages with specificity. In their opposition, Plaintiffs contend that "the record show[s] clearly that Chase . . . deliberately humiliated Plaintiffs during many phone calls" about the March 2009 Application and that Chase "constantly humiliated Plaintiffs" by being "aggressive," "not polite," and providing "conflict[ing] information" to Plaintiffs. (ECF No. 88 at 16). Even when viewed in a light most favorable to Plaintiffs, however, "the evidence in the record supports an inference that any embarrassment or humiliation that [Plaintiffs] might have suffered" was due to Chase's denial of their repeated requests for a HAMP loan modification rather than Chase's failure to comply with the 30-day notice requirement established by the ECOA. *Bertin v. Grant Auto.*, No. 06-3002, 2007 WL 1257183, at *7 (C.D.Ill. Apr. 30, 2007) (declining to award humiliation damages where the evidence showed that any embarrassment suffered by the plaintiff resulted from the actual denial of credit and the repossession of the plaintiff's car rather than the creditor's violation of the ECOA's notice requirement).

response to the March 2009 Application.  The ECOA provides that
"[a]ny creditor . . . who fails to comply with any requirement
imposed under this subchapter shall be liable to the aggrieved
applicant for punitive damages in an amount not greater than
$10,000."  15 U.S.C. § 1691e(b).  Despite the use of "shall,"
Section 1691e(b) "does not require an award of punitive damages
for every violation of the Act."  *Anderson,* 666 F.2d at 1278.
Rather, punitive damages are appropriate "if the defendant's
conduct was wanton, malicious, or oppressive, or if the
defendant acted in reckless disregard of the law."  *Reynolds v.
Reliable Transmissions, Inc*., No. 09-238, 2010 WL 2640065, at *4
(E.D.Va. June 29, 2010) (citing *Fischl*, 708 F.3d at 148;
*Anderson*, 666 F.2d at 1278); *see also Bayard v. Behlmann Auto.
Servs., Inc*., 292 F.Supp.2d 1181, 1187 (E.D.Mo. 2003) ("The
concept of damages as 'punitive' implies some degree of blame
beyond a technical violation of the [ECOA].").  In deciding
whether to award punitive damages, the ECOA instructs courts to
consider, "among other relevant factors, the amount of any
actual damages awarded, the frequency and persistence of
failures of compliance by the creditor, the resources of the
creditor, the number of persons adversely affected, and the
extent to which the creditor's failure of compliance was
intentional."  15 U.S.C. § 1691e(b).

The parties focus their attention on this last factor. Chase posits that it did not deliberately violate the ECOA because when it first received the March 2009 Application, it was not clear whether the statute even applied to loan modification applications submitted pursuant to HAMP – an uncertainty that persisted until the Federal Reserve Board issued a letter on December 4, 2009 advising that the ECOA does apply to loan modification declinations.   (ECF No. 74-1, at 2-3 (citing Letter from the Board of Governors of the Federal Reserve System to Officers and Managers in Charge of Consumer Affairs Sections (Dec. 4, 2009)).   Plaintiffs maintain that the failure to provide a timely response to the March 2009 Application was deliberate because Chase knew that the ECOA applied to HAMP applications long before December 2009, as evidenced by the letter Chase sent to Plaintiffs on July 2, 2009 indicating that it "w[ould] be following up within thirty (30) days of the date of this letter."   (ECF No. 88-2, at 1).[8]   As further support for the purported intentionality of Chase's violation, Plaintiffs point to a January 11, 2010 email in which a Chase executive explained that her "reasoning for not

---

[8]   As above, Chase's contention that Rule 37(c) bars Plaintiffs from introducing the July 2, 2009 letter to support its claim for punitive damages need not be addressed because, even when the letter is considered, Plaintiffs have not established that Chase intentionally violated the ECOA in connection with the March 2009 Application.

continuing to answer [Plaintiffs'] many, many emails is because I feel personal attacks have been launched against numerous members here at Chase bank." (ECF No. 1-5, at 2). Plaintiffs assert that this email demonstrates that Chase deliberately failed to comply with the ECOA's 30-day notice requirement out of a desire to "punish" Plaintiffs and to execute a "personal vendetta" against them. (ECF No. 88, at 15-16).

Construed in a light most favorable to Plaintiffs, the record does not establish that Chase's violation was intentional or committed in reckless disregard of the law. Although the July 2, 2009 letter from Chase does mention a 30-day period, it does not give rise to the inference urged by Plaintiffs (i.e., that this reference constitutes an acknowledgement by Chase of the ECOA's applicability to HAMP declinations, such that its failure to respond within 30 days amounted to an intentional violation). As an initial matter, the letter does not cite to the ECOA in any way. (*See* ECF No. 88-2, at 1). In addition, the 30-day timeframe set forth in the July 2 letter is tied to the date of the letter itself. (*Id.*). By contrast, the 30-day period established by the ECOA is triggered by the "receipt of a completed application for credit." 15 U.S.C. § 1691(d)(1).

With respect to the email from the Chase executive citing Coulibaly's alleged "personal attacks" as a justification for not responding to Plaintiffs' many emails, Plaintiffs overlook

22

that this communication was sent on January 10, 2010, well after Chase issued its untimely denial of the March 2009 Application on September 15, 2009.  For that reason, the email "cannot shed any light on Chase's understanding of a duty to comply with ECOA during" the relevant period of April 2009 to September 2009. (ECF No. 91, at 11).  Thus, at bottom, all Plaintiffs offer to support their allegations of intentionality are bald assertions that are insufficient to create a genuine issue of material fact as to whether Chase deliberately violated the ECOA.

The majority of the remaining factors set forth in Section 1691e(b) also cut against an award of punitive damages.  Chase correctly notes that Plaintiffs do not offer any evidence to establish the frequency or persistence of Chase's violations, or to show that anyone else suffered adverse effects because of Chase's delay in responding to the March 2009 Application.  (ECF No. 91, at 11).  As explained above, there will be no award of actual damages.  In short, the only factor that counsels in favor of punitive damages is Chase's status as a major financial institution with extensive resources.  It cannot be concluded that a discretionary award of punitive damages is warranted on this basis alone.

Because neither actual nor punitive damages will be awarded, Chase is entitled to summary judgment on Plaintiffs' second ECOA claim.[9]

### 3. Timeliness of the January 2010 Application Denial

Chase also is entitled to summary judgment on Plaintiffs' third and final ECOA claim, which asserts that Chase did not provide a timely response to the loan modification application they purportedly submitted in January 2010.

The parties dispute whether Plaintiffs submitted a loan modification application in January 2010. According to the declaration of a Chase executive, Chase never received anything from Plaintiffs in January 2010 that constituted a loan modification application. (ECF No. 74-2, Reardon Decl. ¶ 19). Plaintiffs rejoin that Chase's position is "absurd" and point to a letter from their attorney to Chase as evidence that they

---

[9] Although Plaintiffs included a claim for attorneys' fees in their complaint (*see* ECF No. 1, at "Prayers and Damages"), they do not mention attorneys' fees in opposing Chase's motion for summary judgment. The ECOA provides for a fee award "[i]n the case of any successful action" for actual damages, punitive damages, or equitable and declaratory relief. 15 U.S.C. § 1691e(d). Because none of these three categories of relief will be awarded to Plaintiffs, the fee-shifting provision of the ECOA is inapplicable, notwithstanding Chase's concession of liability. Plaintiffs would not be eligible for attorneys' fees under the ECOA in any event because pro se litigants who are not lawyers are "not entitled to attorneys['] fees authorized by a fee-shifting statute." *Bond v. Blum*, 317 F.3d 385, 398-99 (4th Cir. 2003).

"made an application [i]n January 2010." (ECF No. 88-1, Coulibaly Decl. ¶ 22). That letter, dated May 25, 2010, states that a housing counselor working with Plaintiffs "sent a third party authorization form to Chase on January 22, 2010, along with a letter indicating the financial information used by Chase was incorrect." (ECF No. 1-14, at 1). Plaintiffs also represent that: (1) "[m]any emails exchanged with the HUD housing counselor during [the] months after the January 2010 Application confirmed the existence of [the] January 2010 application"; (2) "Plaintiffs have these emails"; and (3) Plaintiffs "could provide them to the court if necessary." (ECF No. 88, at 10-11; *see also* ECF No. 88-1, Coulibaly Decl. ¶ 22).

Even drawing all reasonable inferences in Plaintiffs' favor, the evidence offered is insufficient to create a genuine issue of fact as to whether Plaintiffs submitted a loan modification application to Chase in January 2010. The May 25, 2010 letter from Plaintiffs' attorney to Chase does not reference a loan modification application submitted by or on behalf of Plaintiffs in January 2010. (*See* ECF No. 1-14). The only mention of any January 2010 submissions to Chase is a reference to the January 22, 2010 letter sent to Chase by Plaintiffs' housing counselor – a communication that Chase acknowledges receiving and attaches to its motion. (*See* ECF No. 74-2, Reardon Decl. ¶ 19 & ECF No. 74-7). An examination of

that document confirms that it consists of:  (1) a short cover page indicating the housing counselor's relationship with the Plaintiffs and (2) a form signed by Plaintiffs authorizing Chase to speak with the housing counselor. (*See* ECF No. 74-7).  The January 22, 2010 fax did not purport to be an application for a loan modification.

Notably, Plaintiffs do not offer a copy of the loan modification application that they allegedly "made" in January 2010.  Nor do Plaintiffs attach the emails they contend confirm the existence of a January 2010 loan modification application, despite representing that such emails are in their possession. What is more, there is no mention of a January 2010 loan modification application in any of the emails or faxes that *are* a part of the record. (*See* ECF Nos. 74-8; 74-10; 74-11).  For example, an email from Coulibaly to a Chase employee makes no reference a January 2010 loan modification application, even when describing Coulibaly's January 20, 2010 meeting with the housing counselor as follows:  "I met a[] HUD housing counselor on January 20, 2010 and we worked on my file and she confirmed our eligibility based on gross income.  She calculated our income and it was enough to be eligible for H[AMP], according to the documents she gave me." (ECF No. 74-8, at 1).  Because there is, at best, a mere "scintilla" of evidence to support the existence of a January 2010 loan modification application,

*Anderson*, 477 U.S. at 252, no reasonable jury could find in favor of Plaintiffs on their third ECOA claim and Chase is therefore entitled to judgment as a matter of law.

### 4.   The December 2010 Application

The court previously dismissed Plaintiffs' ECOA claim relating to the December 2009 Application pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs failed to allege when Chase responded to that application and thus did not state a claim under the ECOA. (ECF No. 54, at 17). Chase nonetheless devotes several pages in both its opening brief and its reply to discussing Chase's handling of the December 2009 Application and asks the court, "[i]n the interests of judicial economy," to decide whether its actions violated the ECOA. (ECF No. 91, at 3 n.3). Plaintiffs likewise spend much of their opposition arguing that they did, in fact, submit a December 2009 Application. (ECF No. 88, at 9-11).

Plaintiffs' efforts do not cure the deficiencies in the complaint because it is well established that "a plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 436 (D.Md. 2006) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). Instead, a plaintiff seeking to amend the complaint at the summary judgment stage must follow the process set forth in the Federal Rules of

Civil Procedure.   *Id.*   In their opposition, Plaintiffs indicate their intent to "file in the future an amended complaint" that, among other things, adds the counts previously dismissed pursuant to Rule 12(b)(6).   (ECF No. 88, at 35).   To date, however, Plaintiffs have not sought leave to amend in accordance with the Federal Rules of Civil Procedure and the Local Rules, and it is now well past time to do so.   Therefore, there is no pending ECOA claim relating to the December 2009 Application to be decided.

## III. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Chase will be granted.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge